**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA MICHAEL,** | ) | **CASE NO. 1:11 CV 926** |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| | ) | |
| **JAVITCH, BLOCK & RATHBONE, LLP,** | ) | <u>**MEMORANDUM OPINION**</u> |
| | ) | |
|     **Defendant.** | ) | |

This matter is before the Court on the Motion for Judgment on the Pleadings filed by Defendant, Javitch, Block & Rathbone, LLC, on September 21, 2011. (Docket #26.) On September 9, 2011, Plaintiff, Melissa Michael, filed her First Amended Complaint (Docket #22) against Defendant, asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. and State law. Plaintiff alleges that the letter Defendant sent her regarding an outstanding credit balance failed to conform to the law and constitutes an unfair debt collection practice. Plaintiff brought her Complaint on behalf of herself, and others similarly situated.

Plaintiff filed her Brief in Opposition to Defendant's Motion for Judgment on the Pleadings on October 21, 2011. (Docket #30.) Defendant filed its Reply Brief on October 26,

2011. (Docket #32.)[1]

## Factual Background

On or about May 12, 2010, Citibank placed a credit card debt allegedly owed by Plaintiff for collection with Defendant. On May 18, 2010, as required by 15 U.S.C. § 1692g, Defendant sent Plaintiff a letter, which reads as follows:

> \* \* \* RE: File No - RCD J35549 nyh
> Creditor - Citibank (South Dakota), N.A.
> THE HOME DEPOT
> Balance Due - $2,725.00
>
> We represent the above creditor concerning the above balance due, which was placed with us for collection.
>
> Although we are a law firm, at this time, no attorney has evaluated your case, or made any recommendations regarding the validity of the creditor's claims, or personally reviewed the circumstances of your account. If making a payment, payment should be made payable to the creditor listed above.
>
> To discuss this matter, please contact:
>
> > Michael Collins
> > at (800) 837-4601 (toll free) weekdays during business hours.
>
> Unless you, within thirty days after receipt of this notice, dispute the validity of this debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you by us. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor. We as a debt collector are attempting to collect a debt and any information obtained will be used for that purpose.
> Our request that you contact us by telephone does not affect the requirement

---

[1] On November 10, 2011, Plaintiff filed a Motion to Strike Extraneous Documents Attached to Defendant's Motion for Judgment on the Pleadings (Docket #33) which was opposed by Defendant on November 11, 2011 (Docket #34). The Court has considered only those documents properly before the Court on a Motion for Judgment on the Pleadings. Plaintiff's Motion to Strike is DENIED.

>under federal law that to obtain verification of the debt, you are required to timely notify us of a dispute in writing.
>
>Sincerely,
>
>Javitch, Block & Rathbone LLP

Plaintiff alleges that prior to May 18, 2010, the date of Defendant's letter, she negotiated a payment plan with CitiBank, by which she would pay $50 per month toward her total debt of $2,775.00. The terms and conditions of this agreement were memorialized in a letter from CitiBank to Plaintiff, dated May 12, 2010. There is no allegation in the Complaint that Defendant knew of this agreement prior to sending its letter to Plaintiff.

Plaintiff does not allege that she timely disputed the validity of the debt or requested verification of the debt.

Defendant filed suit against Plaintiff in the South Euclid Municipal Court, Case No. 10CVF490 on or about June 28, 2010. Counsel for Plaintiff, Mr. Connick, entered his appearance in that case on or about July 20, 2010. On August 6, 2010, Mr. Connick sent Defendant a letter explaining Plaintiff's repayment arrangement. On August 16, 2010, Mr. Connick spoke with the attorney handling the South Euclid Municipal Court case, who then conferred with Citibank. On August 27, 2010, Defendant dismissed the South Euclid Municipal Court case without prejudice by Notice of Voluntary Dismissal.

Plaintiff filed her First Amended Complaint on September 9, 2011 (Docket #22). In Count I, Plaintiff alleges numerous violations of the FDCPA, and states that she raises her claims on behalf of herself and four sub-classes. Specifically, Plaintiff states the following:

>Defendant violated the FDCPA by falsely representing the character, amount or legal status of debt. (Complaint at Paragraph 73.)

> Defendant violated the FDCPA by falsely misrepresenting and/or using of a business, company, or organization name other than the true name of the Defendant's business, company, or organization. (Complaint at Paragraph 74.)
>
> Defendant violated the FDCPA by wrongfully attempting to collect a non-defaulted debt subject to a pay back agreement. (Complaint at Paragraph 75.)
>
> Defendant violated the FDCPA by failing to advise unrepresented consumers, such as Plaintiff, that they could take no legal action against them. (Complaint at Paragraph 76.)
>
> Defendant violated the FDCPA by using the authority and credibility created by its letterhead to collect debt and/or convey the threat of suit, without any meaningful review of the consumer's account. (Complaint at Paragraph 77.)
>
> Defendant violated the FDCPA by using its position and title as attorneys in order to add a false sense of heightened urgency and intimidation to its collection practices, without any meaningful attorney review of the consumer's account. (Complaint at Paragraph 78.)
>
> Defendant violated the FDCPA by mailing a letter that would confuse the "lease sophisticated consumer" about his/her rights. (Complaint at Paragraph 79.)
>
> The absence of attorney evaluation violates Section 1692e(3) of the FDCPA, which prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney." (Complaint at Paragraph 80.)
>
> Defendant violated the FDCPA by mailing a letter that implied that an attorney, acting as an attorney was involved in collecting Plaintiff's debt. (Complaint at Paragraph 81.)
>
> Defendant violated the FDCPA by making a letter that failed to disclose that the contact person was a paralegal – and not an attorney – thus conveying the "least sophisticated consumer" that an attorney had reviewed their file and determined that he/she was a candidate for legal action. (Complaint at Paragraph 82.)
>
> Defendant violated the FDCPA by mailing a letter that was false and misleading in that it raised the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its legal capacity when it sent the letters. (Complaint at Paragraph 83.)
>
> Defendant violated the FDCPA by mailing a letter with an alleged (and insufficient) disclaimer that failed to clarify to the "least sophisticated consumer"

that the law firm, despite overshadowing representations in the letter, was acting solely as a debt collector. (Complaint at Paragraph 84.)

In Count 2, Plaintiff alleges a State law claim for false light invasion of privacy. Plaintiff states that the lawsuit filed against her by Defendant in the South Euclid Municipal Court placed her in a false light in the public record because she was not in default of her debt.

## Standard of Review

The Sixth Circuit reviews motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) under the de novo standard applicable to motions to dismiss under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir. 1988). Correspondingly, the standard of review used by a district court to rule on a motion for judgment on the pleadings is the same as the standard used to rule on Rule 12(b)(6) motions. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

(2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the instant Motion must be decided

### Discussion

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

The Sixth Circuit has instructed that courts must analyze any alleged FDCPA violations through the lens of the "least sophisticated consumer." *Gionis v. Javitch, Block, Rathbone, LLP,* 238 Fed. Appx. 24, 28 (6th Cir. 2007) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)). The least sophisticated consumer standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v.*

*Computer Credit, Inc.,* 167 F.3d 1052, 1054 (6th Cir. 1999) (internal quotation omitted). The least sophisticated consumer test "serves a dual purpose: 'it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.'" *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2nd Cir. 1993) (internal citation omitted).

Although the "least sophisticated debtor" standard is a lower standard, it "'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Id.* at 1319 (2nd Cir. 1993). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.*

**I.     15 U.S.C. § 1692g.**

Section 1692g(a) "requires debt collectors to issue a 'validation notice,' either in the initial communication with a consumer or within five days of that initial communication, that informs the consumer of certain rights including the right to make a written request for verification of the debt and to dispute the validity of the debt." *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 139 (E.D.N.Y. 2006). Section 1692g(a) provides:

(a)  Notice of debt; contents.

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

>   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
>   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
>   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b)  Disputed debts.
>
>   If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.
>
> 15 U.S.C. § 1692g(a).

Congress added § 1692g "specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson v. Southern Or. Credit Serv.*, 869 F.2d at 1222, 1225 (9th Cir. 1988).

Plaintiff states in her Memorandum in Opposition that she is not alleging that Defendant should have conducted an independent investigation of the debt referred for

collection prior to sending the letter, but instead that Defendant failed in its statutory obligation to conduct an initial communication with Plaintiff by which it would have learned of her payment plan. This is a distinction without a difference. Plaintiff is, essentially, arguing that because Defendant did not reach out to her to determine the status of her debt prior to sending the letter, the letter is abusive.

The initial communication and validation notice can be a single communication. The law does not require Defendant to verify the debt with the consumer prior to sending a validation notice. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992). As stated above, the purpose of the validation notice is to provide a consumer with specific information, including a process by which to verify the debt. The validation notice sent to Plaintiff fulfills the requirements of Section 1692g.[2] Plaintiff took no action after receiving the validation notice. One can only speculate as to what may have happened had Plaintiff exercised her rights under the terms of the validation notice. However, such speculation is irrelevant to the finding that the validation notice sent to Plaintiff by Defendant fulfills the requirements of Section 1692g and Defendant was not required to investigate the debt prior to sending the letter to Plaintiff.

**II.    15 U.S.C. § 1692e.**

Plaintiff alleges violations of 15 U.S.C. § 1692e. Section 1692e, titled "False or misleading representation," provides in pertinent part as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of

---

[2] Plaintiff alleges that defendant made false or misleading representations misrepresented the amount of the debt owed to Citibank, in violation of 15 U.S.C. § 1692e(2)(A). There is no viable legal basis to sustain this claim. The Court addresses said claim in detail below.

>the foregoing, the following conduct is a violation of this section:
>>. . .
>>(2) The false representation of--
>>>(A) the character, amount, or legal status of any debt; or
>>>. . .
>>
>>(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>>. . .
>>(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

**A.    15 U.S.C. § 1692e(2)(A).**

15 U.S.C. § 1692e(2)(A) prohibits a debt collector from falsely representing the character, amount or legal status of the debt. Plaintiff asserts that the validation notice, sent by Defendant to Plaintiff, misrepresents the balance due as $2,725.00, in violation of 15 U.S.C. § 1692e(2)(A). The original debt owed was $2,775.00. Plaintiff asserts that the true balance due was only $50.00, the amount of the agreed monthly payment memorialized in the May 12, 2010 letter sent to Plaintiff by CitiBank. The amount of the debt identified in the letter, $2,725.00, presumably reflects one $50.00 payment made by Plaintiff to CitiBank.

Pursuant to 15 U.S.C. § 1692g(a)(1), Defendant is required to accurately state the amount of the debt it has been asked to collect. *Wahl v. Midland Credit Management, Inc.*, 556 F.3d643, 646-47 (7th Cir. 2009). "The 'amount of the debt' is the amount currently sought by the debt collector . . . The purpose of this requirement is to put the consumer on notice as to the amount being sought by the debt collector so the consumer can pay it, or seek verification if the amount is disputed." *Acik v. I.C. System, Inc.*, 640 F. Supp. 2d 1019, 1032 (N.D. Ill. 2009). Defendant may rely upon the representations of its client in sending Plaintiff the validation notice. *Richeson v. Javitch, Block, Rathbone, LLP*, 576 F. Supp. 2d 861, 868 (N.D. Ohio 2008) (citing *Kafele v. Javitch, Block, Eisen & Rathbone, LLP*, No. 2:03 CV 638, 2004 U.S. Dist.

LEXIS 30276 (S.D. Ohio Sept. 27, 2004)).

There is no allegation that Defendant had knowledge of the agreement between Plaintiff and CitiBank when it sent the validation notice and Defendant was not required to independently investigate the status of the debt prior to sending the letter.  The amount of debt set forth in the letter is equal to the total amount Plaintiff owed CitiBank.  Based on the foregoing, Plaintiff has failed to state a valid claim under Section 1692e(2)(a).

**B.	15 U.S.C. § 1692e(3).**

Plaintiff argues that Defendant violated Section 1692(e)(3), which prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney" by using firm letterhead and by failing to identify the contact person as a paralegal.

The mere fact that a letter is written on law firm letterhead does not violate the FDCPA.  The question is whether the least sophisticated debtor, reading the letter, would understand that the law firm has not reviewed the specific facts of the case.  *Greco v. Trauner*, 412 F.3d 360 (2nd Cir. 2005).  The Court in *Greco* explained the requirements of the FDCPA relative to representations of attorney communication as follows:

> One cannot, consistent with FDCPA, mislead the debtor regarding meaningful "attorney" involvement in the debt collection process.  But it does not follow that attorneys may participate in this process only by providing actual legal services.  In fact, attorneys can participate in debt collection in any number of ways, without contravening the FDCPA, so long as their status as attorneys is not misleading.  Put another way, our prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as a attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Greco*, 412 F.3d at 364.

While written on firm letterhead, the validation notice properly disclaims attorney involvement, stating, "Although we are a law firm, at this time, no attorney has evaluated your case, or made any recommendations regarding the validity of the creditor's claims, or personally reviewed the circumstances of your account." Defendant truthfully identified itself,[3] by the use of its letterhead, but explicitly notified the recipient that no attorney had reviewed the account. There is nothing else in the letter by which the least sophisticated consumer with a basic level of understanding could infer attorney involvement. The letter does not threaten litigation or otherwise give the impression of impending litigation.

Plaintiff relies heavily upon the 3rd Circuit decision in *Lesher v. Law Office of Mitchell N. Kay, PC.,* Case No. 10-3194, 2011 U.S. App. LEXIS 12463 (3rd Cir. June 21, 2011), in arguing that the letter violates Section 1692e(3). In *Lesher*, the letter was written on "Law Office of Mitchell N. Kay, PC" letterhead, and included language aimed at negotiating the amount debt and directed payment be made to the Law Offices of Mitchell N. Kay, P.C. A disclaimer of attorney involvement, similar to the disclaimer in this case, was written on the back. The Court found the disclaimer on the back did not clarify the role of the Law Office, given the information and message conveyed in the body of the letter.

Aside from the fact that it was printed on Defendant's letterhead, and included a similar disclaimer, the letter sent by Defendant to Ms. Michael is quite different from the letter in *Lesher*. In Ms. Michael's case, Defendant did not attempt to negotiate the debt and directed that payment be made to CitiBank. The purpose of Defendant's letter was to provide a means for

---

[3] In her First Amended Complaint, Plaintiff asserted, at Paragraph 74, that Defendant violated the FDCPA by using a name other than its true name on the letter. In her Brief in Opposition, at Page 26, Plaintiff states she withdraws this claim.

-12-

validating the debt, and instructed Plaintiff as to the procedure for doing so. As noted by the *Lesher* Court, and by Plaintiff, "some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA."

In addition to the foregoing, Plaintiff asserts that because Defendant failed to state in the letter that the contact person, Michael Collins, was a paralegal, and not an attorney, the letter violates Section 1692e(3).

Defendant expressly informed Plaintiff that although it is a law firm, no attorney had evaluated the case or made any recommendations regarding the validity of the debt. Plaintiff asserts that "the least sophisticated consumer – despite any disclaimer – will reasonably assume that Michael Collins . . . is, in fact, a lawyer." Plaintiff's Brief in Opposition at p. 9. However, as discussed above, a law firm, or an attorney, can participate in this process, and send letters like the one sent to Plaintiff, without being meaningfully involved as an attorney within the collection process for purposes of the FDCPA. The letter does not identify Mr. Collins as a paralegal, nor does it identify Mr. Collins as an attorney. The lack of identification is immaterial, as it does not contradict overshadow the clear disclaimer of attorney evaluation. Plaintiff must plead facts sufficient to demonstrate that the least sophisticated consumer would be misled or deceived. As she has failed to do so, her claim is without merit.

**C.    15 U.S.C. § 1692e(5).**

In her Complaint, Plaintiff asserts that Defendant violated the FDCPA by threatening to take legal action against Plaintiff that it never intended and in fact could not legally take.

Section 1692e provides, in relevant part, that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" such as a "threat to take any action that cannot legally be taken or that is not intended to be

-13-

taken." 15 U.S.C. § 1692e(5).  The use of law firm letter head does not equate with a threat to take action.  *Dupuy v. Weltman*, 442 F. Supp. 2d 822, 826-27 (N.D. Cal. 2006).  As discussed above, a law firm or an attorney can participate in this process without being meaningfully involved as an attorney.  Further, there is no language in the letter which constitutes a threat to take legal action.  *Herzlinger v. Nichter*, No. 7:09 CV 192, 2011 U.S. Dist. LEXIS 42133 (S.D.N.Y. Feb. 9, 2011).  Finally, Defendant did in fact file suit against Plaintiff after receiving no contact from Plaintiff in response to the validation notice, and later dismissed said lawsuit, expeditiously, when it was notified by Plaintiff's attorney that Plaintiff had negotiated a payment plan with CitiBank.  Plaintiff's Complaint fails to state a claim pursuant to 15 U.S.C. § 1692e(5).

### III.    False Light Invasion of Privacy

In her Complaint, Plaintiff states that the lawsuit filed by Defendant against Plaintiff in the South Euclid Municipal Court falsely alleges that Plaintiff was in default and that Defendant placed Plaintiff in a false light by placing in the public record that she was in default of her debt.  Plaintiff states in her Memorandum in Opposition that her common law claim for false light invasion of privacy is based upon Defendant's alleged violation of the FDCPA.  Plaintiff failed to sufficiently allege facts to support her claim that Defendant violated the FDCPA.

"In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld,* 113 Ohio St. 3d 464, 473, 2007 Ohio 2451, 866 N.E.2d 1051 (2007).  Initially, to establish a

-14-

claim of false light invasion of privacy, Plaintiff must prove that the statements which have attracted publicity are untrue. In this case, the allegations in the South Euclid civil complaint reflect the facts as known to Defendant at the time the complaint was filed. There is nothing in the First Amended Complaint to suggest Defendant had knowledge of Plaintiff's agreement with CitiBank to make $50 payments or acted with reckless disregard. Defendant attempted to verify the debt prior to filing the complaint, and dismissed the complaint once it verified the information obtained from Plaintiff's attorney that Plaintiff had arranged with CitiBank to pay the debt.

For the foregoing reasons, Plaintiff's false light invasion of privacy claim fails as a matter of law.

## Conclusion

Plaintiff's Complaint fails to state a claim upon which relief can be granted. The purpose of the FDCPA is to protect consumers from abusive debt collection practices and also to protect debt collectors from liability based upon bizarre or idiosyncratic interpretations of debt collection notices. The FDCPA provides an efficient and straightforward process for handling disputes regarding the validity of a debt. There are those cases in which alleged abuses are obvious, and there are many cases in which the debt collection practices are questionable under the law. This case does not fall into either category. Given the facts alleged by Plaintiff, even the least sophisticated consumer would have understood her rights and Plaintiff has alleged no facts to sufficiently support any of her claims that Defendant violated the law. In this case, the facts and circumstances do not present any indication of the abusive debt collection practices targeted under the FDCPA.

For the foregoing reasons, the Motion for Judgment on the Pleadings filed by Defendant,

Javitch, Block & Rathbone, LLP (Docket #26) is GRANTED.

Plaintiff's Motion to Strike (Docket #33) is DENIED.

Plaintiff's First Amended Complaint is hereby DISMISSED WITH PREJUDICE.  This case is hereby TERMINATED.

IT IS SO ORDERED.

s/Donald C. Nugent<br>
DONALD C. NUGENT<br>
United States District Judge

DATED:  November 15, 2011